CRAWLEY, Presiding Judge.
This is an appeal from an action seeking a sale of property and a division of the resulting proceeds; the parties are the heirs of D. Monroe Benefield (“Monroe”) and Arleavy Benefield (“the widow”). Da-than Benefield (“Dathan”) and six other heirs (collectively “the plaintiffs”)[1] sued Gregory Benefield (“Gregory”) and Sandra Benefield Nuckolls, alleging that the ownership of certain real property was held by the parties as tenants in common and requesting a sale of the property and a division of the resulting proceeds among the parties according to their respective interests. Gregory answered, alleging that the plaintiffs did not have any legal interest in the property in question. Additionally, Gregory filed a counterclaim requesting, among other things, that, in the event the trial court found that the plaintiffs did have an interest in the property, the cost of Gregory’s expenditures and improvements to the property be set off against any interest awarded to the plaintiffs. Apparently, Sandra Benefield Nuc-kolls did not file an answer to the complaint. The trial court entered a judgment denying the plaintiffs’ sale-for-division claim, implicitly finding that the plaintiffs had no legal interests in the property; in its judgment, the trial court also denied Gregory’s counterclaim for a set off.[2] The plaintiffs timely appealed to this court, *420 whereupon the appeal was transferred to our supreme court on. the basis that this court lacked subject-matter jurisdiction. The appeal was then transferred back to this court by our supreme court, pursuant to § 12-2-7(6), Ala.Code 1975. We reverse and remand.

I. Factual Background

The relevant facts of this case begin with the death of Monroe on March 15, either in 1947 or 1948.[3] Monroe did not have a will; he was survived by his widow and their four children, Cecil Benefield, Julius Benefield, Miriam Benefield Perry, and Dathan Benefield. In 1973, the widow, individually and as the administratrix of Monroe’s estate, and Cecil, Julius, and Miriam brought a sale-for-division action against Dathan. The trial court in that action entered a judgment entitled a “Decree Confirming Private Sale.” The portion of that judgment relevant to this case is as follows:
“1. The facts contained in the joint petition of the parties to confirm said private sale of the property involved in the cause are true.
“2. That the aforesaid private sale of the following described real property, to-wit:
“The East half of the Southeast quarter (SE 1/4) of Section 15; the West half of the Southwest quarter (SW 1/4) of Section 14; the West half of the Southeast quarter (SE 1/4) of section 14; the Northeast Quarter (NE 1/4) of the Southwest quarter (SW 1/4) of Section 14; all in Township 16, Range 12, containing 280 acres more or less, located in Cleburne County, Alabama,
“to the said Julius C. Benefield, Miriam Benefield Perry and Dathan E. Bene-field for the total purchase price of Forty-two Thousand Two Hundred Eighty and no/100 ($42,280.00) Dollars, be and the same is hereby confirmed by the Court.
“3. The Register of this Court shall execute and deliver a Deed to the said Julius C. Benefield, Miriam Benefield Perry and Dathan E. Benefield, conveying to them all of the rights, title and interest of all of the parties to this cause in and to said property as hereinabove described.
“4. The following property, to-wit: “The Southeast quarter (SE 1/4) of the Southwest quarter (SW 1/4) of Section 14, Township 16, Range 12, in Cleburne County, Alabama,[4] “is hereby set aside to [the widow] as her homestead under the exemption laws of the State of Alabama.
“5. That from the total amount of $17,032.24 paid into Court by the said Julius C. Benefield, Miriam Benefield Perry and Dathan E. Benefield, [three of the children] the Register of this Court shall make disbursement to the persons named below as follows:
[[Image here]]
“C. Dower interest of [the widow] $5,063.00.
[[Image here]]
“6. The balance of the purchase price paid into Court after allowing the purchasers credit for their respective shares therein amounted to the sum of $17,032.24. After payment of the above referenced costs, there remains for distribution to the parties the sum of *421 $8,429.44. The register shall, therefore, distribute the remaining sum of $8,429.44 to the following parties:
“Cecil M. Benefield [the remaining child] — $8,429.44.
“DONE and ORDERED this 1st day of June, 1978.”
In 1988 the widow conveyed her interest in the property set aside in the 1973 action as her homestead (“the homestead property”) to Julius Benefield. That conveyance purported to convey to Julius a fee simple, and it warranted that the widow was “lawfully seized in fee of the said premises.” In 1996 Julius died; Julius’s will purported to convey a fee-simple interest in the homestead property to his son, Gregory Benefield. In 1998 the widow died, and Dathan contested her will. According to Dathan’s testimony during the trial of this case, he alleged in the will contest that he and the widow’s other heirs[5] were the owners of the homestead property. During that will contest, Gregory argued that he was the sole owner of the homestead property. The record is not clear as to the outcome of the will-contest action; however, it appears that the validity of the widow’s will was upheld. Regardless of whether the widow’s will was valid, there is no assertion by the parties to this case that the underlying issue regarding the widow’s interest in the homestead property was resolved at that time.
Ultimately, in 2002 the plaintiffs filed their complaint in this action seeking a sale for division of the homestead property. Gregory filed an answer stating that he owned the homestead property in fee simple; alternatively, as a counterclaim, Gregory asserted that if the trial court found that he did not have a fee-simple interest in the homestead property that he should be entitled to a credit for the various improvements he had made to the property.
The trial court heard ore tenus testimony and received documentary evidence into the record. Particularly relevant to this case is the judgment in the 1973 action. Gregory argued that, because the judgment in the 1973 action ordered that the widow was to have certain property set aside for her as her homestead, according to the Code in existence at that time, that judgment awarded her a fee-simple interest in the homestead property, which she properly conveyed by deed to her son Julius, who then properly conveyed the homestead property by will to his son (the widow’s grandson), Gregory. The plaintiffs argued that a homestead interest is for the life of the person possessing that interest and that the widow could not have transferred a fee-simple interest in the homestead property. Thus, the plaintiffs claimed, as heirs of the widow they possessed a legal interest in the homestead property and, they argued, the sale-for-division action should proceed.
The trial court did not make written findings of fact, but it entered a judgment against the plaintiffs on their sale-for-division claim. The trial court also entered a judgment against Gregory on his counterclaim seeking a setoff for the value of his expenditures on the homestead property.

II. Discussion

On appeal, the plaintiffs continue to argue that Gregory did not have fee-simple title to the homestead property. The rea *422 son for this, the plaintiffs claim, is that the widow held only a life estate in the homestead property. Thus, the plaintiffs argue, the widow’s conveyance of her interest in the homestead property to her son Julius during her lifetime could have been effective only for the remainder of her life. Additionally, the plaintiffs argue, Julius’s conveyance of his interest in the homestead property to his son Gregory by will was also effective only for, at most, the remainder, of the widow’s life. When the widow died in 1998, the plaintiffs argue, title to the homestead property vested in the heirs of Monroe. According to the plaintiffs, a sale for division of the homestead property is proper because, they argue, the parties are tenants in common and Gregory does not have fee-simple title to the property.
Although he did not submit a brief to this court, Gregory argued to the trial court that he in fact did have proper title to the homestead property and asserted in his counterclaim that, in the event the trial court found he did not have proper title, he was entitled to set off from any award to the plaintiffs the cost of improvements and expenditures he made on the homestead property.
In this case, the trial court received evidence ore tenus, but it made no specific findings of fact. Because the trial judge made no specific findings of fact, we will assume that the trial judge made those findings necessary to support the judgment. Transamerica Commercial Fin. Corp. v. AmSouth Bank, N.A., 608 So.2d 375, 378 (Ala.1992). Under the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support its judgment carry a presumption of correctness, and the judgment will not be reversed unless found to be plainly and palpably wrong. Id. Furthermore, “ ‘[t]he trial court’s judgment in such a case will be affirmed, if, under any reasonable aspect of the testimony, there is credible evidence to support the judgment.’ ” Id. (quoting Clark v. Albertville Nursing Home, Inc., 545 So.2d 9, 13 (Ala.1989)).
Although Gregory testified that he had a fee-simple interest in the homestead property, his testimony was in the nature of a legal conclusion and we owe it no deference. See Ex parte Dial, 387 So.2d 879, 880 (Ala.1980) (stating that it has long been the law that a witness may not give his opinion on a question of law or upon matters that involve questions of law because conclusions of law are exclusively for the courts to make). The determinative factors in this case are the documents themselves, specifically the judgment in the 1973 action.
“A ‘homestead’ is generally defined as the home or house where a family resides, where the head of the family dwells, and any adjoining or appurtenant land used for the family’s comfort and sustenance. Skipworth v. Skipworth, 383 So.2d 524 (Ala.1980); Gardner v. Roberts, 565 So.2d 638 (Ala.Civ. App.1990). The purpose of the homestead exemption is, within certain limitations, to protect and secure a home for one’s family, regardless of financial circumstances. First Alabama Bank of Dothan v. Renfro, 452 So.2d 464 (Ala.1984). To qualify for the protection afforded by Alabama’s homestead exemption, one must be a ‘resident’ and must, in fact, occupy a ‘home’ in the state of Alabama.”
Sims v. Cox, 611 So.2d 339, 340 (Ala.1992). In this case it is not disputed that the widow qualified for the protection of Alabama’s homestead exemption. What is disputed is whether the homestead interest she acquired in the property was for her life only or was in fee simple.
*423 Courts apply the homestead law in Alabama as it existed at the time of the decedent’s death. E.g., Rodgers v. Bradley, 533 So.2d 546, 548 (Ala.1988); see also Hicks v. Huggins, 405 So.2d 1324, 1326-27 (Ala.Civ.App.1981) (stating that the homestead law to be applied was the law in effect at the time of the decedent’s death in 1946, despite the fact that the decedent’s widow did not seek to have the homestead set aside for her until 1979).
In this case, the relevant statutes at the time of Monroe’s death were codified as Title 7, § 661, § 663, and § 697, Ala.Code 1940. Section 661 provided:
“The homestead of any resident of this state, leaving surviving him at his death a widow and minor child or children, or either, with the improvements and appurtenances not exceeding in value two thousand dollars, and in area one hundred and sixty acres, shall be exempt from administration and the payment of the debts in favor of such widow and minor children, or either, in any event, during the life of the widow, or the minority of the child or children, whichever may last terminate; and the rents and profits of such homestead, if there be a widow and no minor child, shall inure to her benefit during her life; or if there be a minor child or children, and no widow, then to the benefit of such child, or children, during minority; or if there be both widow and minor child or children, then to their equal benefit during the life of the widow and the minority of the child or children. Such homestead may be retained by the widow or minor child or children, until it is ascertained whether the estate is solvent or insolvent; and if the estate is insolvent, it shall vest in them absolutely, and it shall not be sold or partitioned by order of any court until the death of the widow and the youngest child is of age, except by the order of the circuit court in equity, for reinvestment, with the consent of the widow, in writing, if living.”
(Emphasis added.) Section 663 provided:
“When the homestead set apart to the widow and minor child or children, or either, constitutes all the real estate owned in this state by the decedent at the time of his death, the title of such homestead vests absolutely in them, whether there be administration on the estate of the decedent or not; but the title to the homestead shall not vest absolutely in them as against the other heirs of decedent until it is so set apart and until it is judicially determined that it is all the real estate owned by the decedent, and that it is not of greater value than two thousand dollars; but as against the creditors of decedent, the title of the homestead will be presumed to be absolute until it is judicially determined that it is not all of the real estate left by decedent, and that it is of greater value than two thousand dollars, and the homestead secured hereby shall be held and governed as in section 661 of this title.”
Section 697 provided in March of 1947[6] as follows:
“If no exceptions are filed and sustained to such report of the commissioners setting apart exemptions, and it is determined that the property set apart was all the property left by decedent, and that he left less property than was exempt to the widow and minors, the title to the property so set aside, whether real or personal, vests absolutely in the widow and minor child or children, or either, as the case may be, share and *424 share alike, and shall be held and governed by section 661 of this title; but if it be determined by the court that the decedent owned and left at his death more property than was thus set aside, or more than was exempt by law to the widow and minors, the title to the property shall vest in the widow and minors, share and share alike, but only during the life of the widow and the minority of the children.”
(Emphasis added.)
We note that “[generally, a homestead is a life estate in the widow.” Taylor v. Russell, 369 So.2d 537, 541 (Ala.l979)(citing Bryant v. Perryman, 213 Ala. 561,105 So. 561 (1925)).
Title 7, § 663, Ala.Code 1940, provided, in part, that the title to the homestead shall not vest absolutely in the widow and her children as against the other heirs of decedent “until it is so set apart and until it is judicially determined that it is all the real estate owned by the decedent, and that it is not of greater value than two thousand dollars.” Title 7, § 697, Ala.Code 1940, provided, in part, that if it is “determined by the court that the decedent owned and left at his death more property than was thus set aside, or more than was exempt by law to the yúdow and minors, the title to the property shall vest in the widow and minors, share and share alike, but only during the life of the widow and the minority of the children.” In this case, Monroe owned more property than that which was set aside as the widow’s homestead. The judgment in the 1973 action, by granting Julius Benefield, Miriam Benefield Perry, and Dathan an interest in 280 acres that was separate from the property set aside as the widow’s homestead, indicates that the property the widow received was certainly not all of the property owned by Monroe at his death. The statutes quoted above provide that in this case the widow acquired a life estate in the homestead property. The plain language of the statutes mandate this result.
The trial court in the 1973 action would have applied the same principles as we do in the present case, given that the widow’s homestead rights were established by the law existing at the time of Monroe’s death. Our conclusion that the judgment in the 1973 action granted the widow a life estate in the homestead property is supported by our supreme court’s holding in Walker v. Hayes, 248 Ala. 492, 28 So.2d 413 (1946). The Walker court noted the plain language of the homestead statutes and then observed that “the general trend of legislative intention [has been] to vest the fee in the widow and minor child or children as the case might be, only after the report of the commissioners has been made as required by the statute, and also only after there has been certain judicial determination.” 248 Ala. at 495, 28 So.2d at 416. In this case, the record does not disclose that there has been a judicial determination regarding the homestead property to meet the statutory requirements necessary for the widow to have been granted a fee simple in the homestead property. In fact, the record demonstrates that such a judicial determination could not have been made because the homestead property was not all the property Monroe owned at the time of his death.
In Bishop v. Johnson, 242 Ala. 551, 556, 7 So.2d 281, 284 (1942), our supreme court held that,
“unless title to the homestead is vested absolutely in the widow and minor child or children, they have only the right of occupancy until set apart to them as provided by the statute of force at the time of the death of the husband and father. The extent of such right of occupancy by the widow exists during her life and the minority of children. And if *425 the widow undertakes to sell her life estate, even though the same be by a warranty deed, she conveys only her life estate and not the fee (Code 1923, § 6925, Code 1907, § 3420, Code 1940, Tit. 47, § 153), and such act does not affect the rights of minor children or heirs at law.”
Consequently, the purported conveyance of the homestead property in fee simple by the widow to her son Julius was ineffective; she conveyed only her life estate. Furthermore, Julius’s purported conveyance of the homestead property by will to his son Gregory conveyed only the widow’s life estate. Bonner v. Pugh, 376 So.2d 1354, 1357 (Ala.l979)(noting that when a person who has only an estate for life purports to transfer an estate greater than the estate for life, his or her conveyee acquires thereby, as against the owner of a future interest in such land, no right, privilege, power, or immunity greater than those possessed by the conveyer). Finally, when the widow died in 1998, Monroe’s heirs acquired a present interest in the homestead property and, therefore, properly could bring an action for a sale for division.

III. Conclusion

The property interest set aside as homestead for the widow in the judgment in the 1973 action was not all the property held by Monroe at the time of his death; therefore the widow obtained only a life estate in the homestead property. As a consequence, the conveyances of that property, first by the widow to her son Julius, and then by Julius to his son Gregory, conveyed only a life estate in the property. Therefore, Gregory presently holds only the interest that he would inherit following his father’s death, and the sale-for-division action brought by the plaintiffs may proceed.
REVERSED AND REMANDED.
THOMPSON, PITTMAN, and BRYAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.

. In addition to Dathan, the plaintiffs are Jackie Benefield, Miriam Benefield Periy, Linda Benefield Miller, Steve Benefield, Judy Benefield Maxwell, and James M. ("Mike”) Benefield. Mike Benefield was originally named as a defendant, but he was realigned as a plaintiff.

. By finding against the plaintiffs on their sale-for-division claim, the trial court effectively rendered Gregory’s counterclaim moot.

. Whether Monroe died in 1947 or 1948 does not affect the resolution of this case because no relevant change in the applicable statutes occurred during that time.

. This is separate property from that which was ordered deeded to the children,

. Specifically, the heirs of the widow include her living children, Dathan Benefield, and Miriam Benefield Perry; the heirs of her deceased child Julius C. Benefield, including Jackie Benefield, Judy Benefield Maxwell, Gregory Benefield, and Sandra Benefield Nuckolls; and the heirs of her deceased child Cecil Benefield, Linda Benefield Miller, Steve Benefield, and Mike Benefield.

. On July 29, 1947, Title 7, § 697, Ala.Code 1940, was amended to no longer apply to personal property; however in all other respects this section remained the same.